

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00038-CV

**IN THE ESTATE OF EMILY D. PRIETO**, Deceased

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2008-PB7-000086L1
Honorable Hugo Martinez, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Irene Rios, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: August 28, 2024

REVERSED AND REMANDED

Eduardo David Prieto ("Eduardo") appeals from the trial court's final judgment denying his claims related to his mother's estate. We reverse and remand.

## BACKGROUND

On August 21, 2008, Eduardo's mother, Emily D. Prieto ("Prieto"), died leaving a will that distributed "all the rest, residue and remainder" of her property to an inter vivos trust she had created and "any amendments . . . thereto." About five weeks later, on September 29, 2008, the trial court admitted Prieto's will to probate and appointed Eduardo's brother, Victor G. Prieto, independent executor of the estate. More than six years later, on October 27, 2014, Eduardo filed the underlying suit in the County Court at Law No. 1, Webb County, Texas. In his original petition,

Eduardo contested the validity of the trust and sought declaratory relief related to his mother's estate. Additionally, he brought claims against Victor for breach of fiduciary duty and conversion.

Victor answered the suit, denying Eduardo's allegations and raising the affirmative defense of limitations. Victor filed a motion to dismiss, arguing the trial court lacked jurisdiction over the suit because it involved trust claims and the district court had exclusive jurisdiction over those claims. *See* TEX. PROP. CODE § 115.001. Additionally, Victor filed a traditional motion for summary judgment, which advanced the same jurisdictional arguments as to the declaratory judgment claims. In his summary judgment motion, Victor argued that the statute of limitations barred the trust contest claim and that he could conclusively disprove at least one element of the breach of fiduciary duty and conversion claims.

After the summary judgment motion was filed, Eduardo amended his petition, omitting the breach of fiduciary duty and conversion claims and adding a will contest claim. The amended petition retained the trust contest and declaratory judgment claims.[1] Eduardo also filed a response to the summary judgment motion, arguing that Victor did not conclusively prove his limitations defense and, alternatively, that fraudulent concealment precluded the granting of summary judgment based on limitations.

The trial court granted both the dismissal and summary judgment motions and signed a final judgment denying Eduardo relief on his claims. The trial court's judgment did not state the ground or grounds on which its ruling was based. Eduardo appealed.

---

[1]The declaratory judgment claims were closely related to the trust and will contest claims. Specifically, the amended petition asked the trial court to (1) set aside the decedent's will because it was executed when she lacked testamentary capacity and because it was the result of undue influence exerted over her; (2) declare the Prieto Living Trust First Amendment void because the decedent lacked the capacity to make a trust and because the trust documents were the product of undue influence; (3) declare Eduardo "an heir" to the trust and the decedent's estate; (4) direct the executor to distribute him his share of the trust and estate; (5) restrain Victor from making any future distributions until Eduardo received his rightful distribution; (6) direct the executor to recover the distributions made in the past; (7) determine that the Prieto Living Trust First Amendment is invalid; and (8) determine the construction of the decedent's will and any trust documents.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) "The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried [his] burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *see* TEX. R. CIV. P. 166a(c). "In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor." *KPMG Peat Marwick*, 988 S.W.2d at 748.

"Whether a trial court has subject-matter jurisdiction over a case is a question of law and, therefore, we review de novo a trial court's ruling on a motion to dismiss for lack of jurisdiction." *Sonne v. Harris Cnty. Appraisal Dist.*, No. 01-12-00749-CV, 2014 WL 2933227, at *2 (Tex. App.—Houston [1st Dist.] June 26, 2014, no pet.).

## TRIAL COURT'S JURISDICTION

In his fifth issue, Eduardo argues the trial court erred in granting Victor's motion to dismiss his suit. In his sixth issue, Eduardo argues the trial court erred in granting his summary judgment motion on the ground the trial court lacked jurisdiction over his declaratory judgment claims.

Victor's jurisdictional arguments were based on section 115.001(a) of the Texas Property Code, which provides: "Except as provided by Subsection (d) of this section, a district court has original and exclusive jurisdiction over all proceedings by or against a trustee and all proceedings concerning trusts." TEX. PROP. CODE § 115.001(a). Notably, subsection 115.001(d)(5) of the Texas Property Code expressly provides that the district court's jurisdiction over trust proceedings is exclusive, "except for jurisdiction conferred by law on . . . a county court at law." *Id*. § 115.001.

The trial court is one of three statutory county courts in Webb County, which is a county that does not have a statutory probate court. *See* TEX. GOV'T CODE §§ 25.2421, 25.2422. Accordingly, the trial court has original probate jurisdiction. *See* TEX. GOV'T CODE § 25.0003(d) (noting statutory county courts generally have the same probate jurisdiction as the county courts); *Jurgens v. Martin*, 631 S.W.3d 385, 399–400 (Tex. App.—Eastland 2021, no pet.) ("County courts at law also have concurrent original probate jurisdiction with the county court in counties that do not have a statutory probate court."). Section 32.001 of the Texas Estates Code provides that all probate proceedings must be filed and heard in a court exercising original probate jurisdiction, and a "court exercising original probate jurisdiction also has jurisdiction of all matters related to the probate proceeding as specified in [s]ection 31.002 for that type of court." TEX. EST. CODE § 32.001(a). Section 31.002(b)(3) states that, in a county in which there is no statutory probate court, the jurisdiction of a county court at law exercising original probate jurisdiction includes the interpretation and administration of an inter vivos trust created by a decedent whose will has been admitted to probate in the court. *Id*. § 31.002(b)(3).

Here, the trial court, which has original probate jurisdiction, is the court that admitted Prieto's will to probate. *See* TEX. GOV'T CODE § 25.0003(d); *Jurgens*, 631 S.W.3d at 399–400. Additionally, Eduardo's trust contest and declaratory judgment claims involve the interpretation and administration of the inter vivos trust created by Prieto. Therefore, we conclude the trial court had subject-matter jurisdiction over Eduardo's trust contest and declaratory judgment claims. *See* TEX. EST. CODE § 31.002(b)(3). Accordingly, the trial court erred in granting the motion to dismiss and in granting the summary judgment motion on the ground the trial court lacked jurisdiction over the declaratory judgment claims.[2] We sustain Eduardo's fifth and sixth issues.

---

[2]On appeal, Victor concedes the trial court had jurisdiction over the trust contest and declaratory judgment claims.

## TRUST CONTEST CLAIM

In his first issue, Eduardo argues the trial court erred by granting summary judgment on the trust contest claim because the evidence raises a material fact issue regarding Victor's limitations defense. In the same issue, Eduardo argues the summary judgment evidence raises a material fact issue regarding his fraudulent concealment defense to the statute of limitations.

"[M]atters relevant to limitations generally fall into one of two categories that determine the parties' respective burdens on summary judgment." *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). "First, the defendant has the burden regarding any issues raised that affect which days count toward the running of limitations—such as accrual, the discovery rule, and tolling." *Id*. "Second, if the defendant carries that burden and conclusively establishes its defense, the plaintiff can avoid summary judgment by raising a material fact issue on any equitable defense that its suit should not be barred even though the limitations period has run—such as fraudulent concealment, estoppel, or diligent service." *Id*. at 88-89.

**Does the discovery rule apply?**

When analyzing the first category of issues—which includes the discovery rule—courts begin with the statute establishing the defense. *Id*. at 89. Here, Victor's summary judgment motion challenged the trust contest claim on the ground that it was barred by the two-year limitations period provided in section 256.204(a) of the Texas Estates Code, which states:

> After a will is admitted to probate, an interested person may commence a suit to contest the validity thereof *not later than the second anniversary of the date the will was admitted to probate*, except that an interested person may commence a suit to cancel a will for forgery or other fraud not later than the second anniversary of the date the forgery or fraud was discovered.

TEX. EST. CODE § 256.204(a) (emphasis added).[3]

---

[3]Section 256.204(a) states that it applies to a suit to contest the validity of a will. Victor's summary judgment motion argues that section 256.204(a) applies to Eduardo's trust contest claim. Eduardo does not argue that section 256.204(a)

Generally, Texas courts do not apply the discovery rule to claims arising out of probate proceedings, even in the face of allegations of fraud. *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997). However, section 256.204(a) creates an exception to the general rule, providing that "an interested person may commence a suit to cancel a will for forgery or other fraud not later than the second anniversary of the date *the forgery or fraud was discovered*." *See* TEX. EST. CODE § 256.204(a) (emphasis supplied); *Fields v. Fields*, No. 01-21-00138-CV, 2022 WL 2836808, at *7 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ("[W]e conclude that the language of section 256.204(a) reflects a legislative intent that the discovery rule be applied in suits to cancel previously admitted wills for fraud or forgery."); *see also Escontrias v. Apodaca*, 629 S.W.2d 697, 698 (Tex. 1982) (concluding discovery rule applied to Probate Code section 93, the substantively identical predecessor statute to section 256.204(a)); *In re Estate of Cantu*, No. 04-10-00389-CV, 2011 WL 446640, at *2 (Tex. App.—San Antonio Feb. 9, 2011, no pet.) (noting Probate Code section 93 "incorporates a discovery rule which could otherwise save a forgery claim from a limitations defense."); *Evans v. Allen*, 358 S.W.3d 358, 365 n.3 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (noting the plain language of Probate Code section 93, section 256.204(a)'s substantively identical predecessor, provided "an exception to the general two-year statute of limitations only in cases of 'forgery or other fraud.'").

Thus, section 256.204(a)'s discovery rule applies to suits to cancel wills "for forgery or other fraud." TEX. EST. CODE § 256.204(a). However, for the discovery rule in section 256.204(a) to apply, the fraud in question must be "extrinsic fraud." *See Burns v. Burns*, No. 12-22-00256-

---

does not apply to the trust contest claim, and we are constrained by the arguments Eduardo makes in his appellant's brief. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) ("A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal."); *DiGrazia v. Atl. Mut. Ins. Co.*, 944 S.W.2d 731, 733 (Tex. App.—Texarkana 1997, no writ) (recognizing appellate courts "cannot reverse a summary judgment based on a ground not assigned as a point of error."). Therefore, for purposes of resolving this appeal, we assume, without deciding, that section 256.204(a) applies to the trust contest claim.

CV, 2023 WL 3033145, at *4 n.6 (Tex. App.—Tyler Apr. 20, 2023, pet. denied) (applying section 256.204(a) of the Estates Code); *see also Neill v. Yett*, 746 S.W.2d 32, 35 (Tex. Civ. App.—Austin 1988, writ denied) (analyzing the substantively identical predecessor statute to section 256.204(a), section 93 of the Probate Code). "Fraud is considered 'intrinsic' when the fraudulent acts pertain to an issue that was, or could have been, litigated in the original suit." *Neill*, 746 S.W.2d at 35. "Intrinsic fraud . . . relates to the merits of the issues that were presented and presumably were or should have been settled in the former action." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003). A contest based on contentions that the decedent lacked testamentary capacity or was the product of undue influence are characterized as "intrinsic" fraud because they could have been litigated in the proceeding admitting the will to probate. *See Neill*, 746 S.W.2d at 35. "On the other hand, fraud is extrinsic when the fraudulent acts prevent a party from either having a trial or prevent him from having a fair opportunity to present his case." *Id*. "Extrinsic fraud is fraud that denied a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *Chapman*, 118 S.W.3d at 752.

In the present case, Eduardo raised section 256.204(a)'s discovery rule in his live pleadings, alleging his mother's will "was the product of forgery and/or other fraud" and "this suit was [] instituted within two years after the discovery of the fraud." Additionally, Eduardo presented summary judgment proof to support these allegations. In his affidavit, Eduardo testified that Victor "overpowered" his mother's mind and "forced" her to sign a will and a trust she never would have signed without Victor's influence. These actions constitute intrinsic fraud, which does not trigger section 256.204(a)'s limitations exception. *See Burns*, 2023 WL 3033145, at *4 n.6 (specifying plaintiff's allegation that decedent lacked testamentary capacity did not fall within the limitations exception in section 246.204(a)); *Neill*, 746 S.W.2d at 35 (stating that allegations that decedent lacked testamentary capacity and was under undue influence when signing will were

"issues that were, or could have been, adjudicated in the probate proceeding and hence constituted intrinsic fraud"). However, Eduardo also testified that he repeatedly asked Victor for copies of their mother's will and all supporting documents. Instead of providing him the documents, Victor told Eduardo that "everyone is equal and will get an equal share." Eduardo claimed he "had no way of finding out the truth because Victor kept the documents in his safe and refused to give him a copy." And, according to Eduardo's testimony, until late 2013, Victor had made payments to him, which Victor characterized as distributions from their mother's estate. Eduardo added: "Up until 2014, my brother Victor had told me that I was a beneficiary and that I would be receiving an equal amount. October 2014 was the first time I realized that was a lie." Finally, Eduardo testified that Victor's "fraudulent misrepresentations and concealment of critical documents induced me to delay the filing of this lawsuit." These actions, if true, prevented Eduardo from having a fair opportunity to present his case and qualify as extrinsic fraud, which triggers the exception contained in section 256.204(a). *See Burns*, 2023 WL 3033145, at *4 n.6 (noting allegation that executor committed fraud by failing to notify plaintiff of probate proceedings was extrinsic fraud and potentially triggered section 256.204(a)'s limitations exception). Because Victor complains of extrinsic fraud, we conclude the discovery rule contained in 256.204(a) applies to this case.

**Did Victor satisfy his summary judgment burden?**

Generally, "to obtain traditional summary judgment on a limitations defense, the defendant must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that the statute of limitations has run." (citation omitted). *Draughon*, 631 S.W.3d at 89. "A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *Id*. "A defendant moving for traditional summary judgment may negate the discovery

rule by either conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it." *Id*. at 90. We have already concluded the discovery rule contained in 256.204(a) applies to this case, therefore, the burden was on Victor to conclusively establish that the summary judgment evidence negated the discovery rule. *See id*.

In his summary judgment motion, Victor argued that (1) Eduardo's claim accrued on September 29, 2008, which was the date the trial court signed the order admitting Prieto's will to probate, and (2) that Eduardo's trust contest claim was barred by limitations because it was filed more than two years after the will was admitted to probate. Victor relied on *Mooney v. Harlin*, which held that limitations begins to run when an examination of the probate records will disclose that an individual is not a beneficiary thereby apprising him of the nature of his injury. 622 S.W.2d 83, 85 (Tex. 1981) ("A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records."). In *Mooney*, the plaintiff brought her fraud claim more than four years after the decedent's will had been admitted to probate. *Id*. at 84. The executor moved for summary judgment asserting the fraud claim was barred by the two-year statute of limitations. *Id*. The supreme court held that the summary judgment was properly granted because the decedent's will, which was on file in the probate records, disclosed the plaintiff was not a beneficiary. *Id*. at 85 ("When evidence of fraud may be disclosed by examination of public records this court has held limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence.").

The present case is distinguishable from *Mooney* because the probate records did not disclose Eduardo's non-beneficiary status. Prieto's will was filed in the probate records before it was admitted to probate. In her will, Prieto "g[a]ve all the rest, residue, and remainder of [her] property" "to the then acting Trustee(s) of [her] revocable living trust" "known as the [] Prieto Living Trust" "and any amendments … thereto." But the will itself does not list the beneficiaries.

Rather, the trust document and its amendment, which were not filed in the probate records, disclose the beneficiaries. Therefore, in this case, Eduardo could not have learned of his non-beneficiary status by examining the probate records, and Victor could not rely on constructive notice to conclusively prove his limitations defense.

Here, the limitations period did not begin to run on the date the will was admitted to probate; instead, it began to run on the date the fraud was discovered or should have been discovered by the exercise of ordinary care and diligence. *See Aston v. Lyons*, 577 S.W.2d 516, 519 (Tex. App.—Texarkana 1979, no writ) ("The discovery rule in this case may be stated to be the legal principle that a statute of limitations barring an action to cancel a will for forgery, runs not from the date of offering the will for probate or the actual date of probate, but runs from the date the forgery was discovered or should have been discovered by the exercise of ordinary care and diligence."). And, as previously discussed, the burden was on Victor to conclusively prove the date the fraud was discovered or should have been discovered by the exercise of ordinary care and diligence. *See Draughon*, 631 S.W.3d at 90 ("[O]n motion for summary judgment, the burden is on the defendant to negate the discovery rule."); *Aston*, 577 S.W.2d at 518 (reversing summary judgment when suit was filed more than two years after the will's probate but the summary judgment "proof did not show that the will was discovered to be a forgery more than two years prior to bringing suit or that if [plaintiffs] had used reasonable diligence, they could have discovered the forgery within two years following the will's probate.").

The summary judgment record demonstrates that a material fact issue exists regarding when the fraud was discovered or should have been discovered by the exercise of reasonable diligence. In his deposition, Victor testified that he had given each of his siblings, including Eduardo, copies of the will and the trust documents following Prieto's death. However, Eduardo directly controverted this evidence in his affidavit, testifying that he "had no way of finding out

the truth because Victor kept the documents in his safe and refused to give me a copy." Eduardo further testified: "Up until 2014, my brother had told me that I was a beneficiary and that I would be receiving an equal amount." In sum, Victor failed to carry his burden to conclusively establish when Eduardo discovered, or in the exercise of reasonable diligence should have discovered, the nature of his injury. Because Victor failed to conclusively establish his limitations defense, the trial court erred in granting summary judgment on this ground. *See Draughon*, 631 S.W.3d at 89-90; *KMPG Peat Marwick*, 988 S.W.2d at 748. We sustain Eduardo's first issue.

Having concluded Victor failed to conclusively establish his limitations defense, we need not address Eduardo's alternative argument that the trial court erred in granting summary judgment on his trust contest claim because he produced evidence on each of the elements of fraudulent concealment. *See* TEX. R. APP. P. 47.1 (requiring courts of appeals to address "every issue raised and necessary to final disposition of the appeal.").

## WILL CONTEST CLAIM

In his seventh issue, Eduardo argues the trial court erred in granting summary judgment on his will contest claim because the summary judgment motion did not address this claim.

A motion for summary judgment "shall state the specific grounds therefor." TEX. R. CIV. P. 166a(c). "A motion for summary judgment must itself expressly present the grounds on which it is made, and must stand or fall on these grounds alone." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)). "Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

On appeal, Victor acknowledges his summary judgment motion did not raise the defense of limitations as to the will contest claim, but he nevertheless contends the summary judgment should be affirmed because like the trust contest claim the will contest claim is barred by limitations. We disagree. As we explained above, Victor did not meet his burden to conclusively prove his limitations defense with respect to the trust contest claim.

Because Victor did not move for summary judgment on Eduardo's will contest claim, the trial court erred in granting summary judgment as to this claim. *See Magee*, 347 S.W.3d at 297; *Davis*, 305 S.W.3d at 73. We sustain Eduardo's seventh issue.

CONVERSION AND BREACH OF FIDUCIARY DUTY CLAIMS

In his second issue, Eduardo argues the trial court erred in granting summary judgment because there is a genuine issue of material fact as to his breach of fiduciary duty claim. In his third and fourth issues, Eduardo argues the trial court erred in granting summary judgment because there is a genuine issue of material fact as to his conversion claim.

"Our rules provide that amended pleadings and their contents take the place of prior pleadings." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) (citing TEX. R. CIV. P. 65). "[F]iling an amended petition that does not include a cause of action effectively non[-]suits or voluntarily dismisses the omitted claims as of the time the pleading is filed." *Id*. at 632. A non-suit extinguishes a claim from the moment it is filed. *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006). "In the context of traditional summary judgment proceedings, the plaintiff may take a non-suit at any time before the trial court renders its decision." *Pace Concerts, Ltd. v. Resendez*, 72 S.W.3d 700, 702 (Tex. App.—San Antonio 2002, no pet.).

Here, Victor moved for summary judgment on Eduardo's breach of fiduciary duty and conversion claims. After Victor filed his summary judgment motion and before the trial court

granted summary judgment, Eduardo filed an amended petition that dropped his breach of fiduciary duty and conversion claims, effectively non-suiting them before the trial court granted summary judgment. *See FKM P'ship*, 255 S.W.3d at 632-33; *Estate of Blackmon*, 195 S.W.3d at 100. Because the breach of fiduciary duty and conversion claims were no longer pending when the trial court granted summary judgment, the trial court did not dispose of them in its order granting summary judgment.[4] We, therefore, reject Eduardo's arguments that the trial court erred in granting summary judgment on his breach of fiduciary duty and conversion claims. We overrule Eduardo's second, third, and fourth issues.

## FAILURE TO RULE ON OBJECTIONS

In his eighth issue, Eduardo argues the trial court erred by not ruling on his written objections to Victor's summary judgment motion and evidence. However, the record does not show that Eduardo objected to the trial court's refusal to rule on his objections. Therefore, this issue is not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(2)(B) (requiring complaining party to object to the trial court's refusal to rule to preserve a complaint for appellate review); *Matter of Estate of Spiller*, No. 04-18-00522-CV, 2019 WL 2360100, at *4 n.3 (Tex. App.—San Antonio June 5, 2019, pet. denied) ("Where the record does not reflect that the trial court ruled or refused to rule on objections to summary judgment evidence, we may not infer a ruling based solely on the trial court's summary judgment decision."). We overrule Eduardo's eighth issue.

## CONCLUSION

The trial court's judgment is reversed and this case is remanded to the trial court for proceedings consistent with our opinion.

Liza A. Rodriguez, Justice

---

[4]The trial court's judgment generally states that "all claims asserted by [Eduardo] are denied"; it does not expressly mention the breach of fiduciary duty and conversion claims.